In the Matter of the SEARCH OF the PREMISES KNOWN AS 1182 NASSAU AVERILL PARK ROAD, County Route 15, Town of Nassau, New York, premises consisting of a two story, wood frame residence, white in color, on east side of Nassau Averill Park Road, .3 miles North of China Hill Road.

Paul F. Marsch, Movant.

No. 00–M–314(DRH).

United States District Court, N.D. New York.

March 22, 2002.

Iseman, Cunningham, Riester & Hyde, LLP, Albany, New York, for movant Paul F. Marsch, Cara E. Johnson, of counsel.

Hon. Joseph A. Pavone, United States Attorney for the Northern District of New York, James T. Foley, U.S. Courthouse, Albany, New York, for respondent United States of America, William C. Pericak, Assistant United States Attorney, of counsel.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Presently pending is the motion of movant Paul F. Marsch ("Marsch") to unseal the affidavit in support of the above captioned search warrant. Docket No. 4. For the reasons which follow, that motion is granted in part and denied in part.

### I. Background

In an affidavit dated August 1, 2000, John P. Morgan, a Special Agent of the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms (ATF), submitted an affidavit (hereinafter the "Morgan Affidavit") to the undersigned in support of an application for a search warrant for Marsch's residence located in Nassau, Rensselaer County, New York. The Morgan Affidavit was order sealed as was the sealing order. Docket Nos. 1, 2. Based on that affidavit, a search warrant was issued to search for and seize "a Thompson sub machine gun a/k/a 'Tommy gun.'" Docket No. 3; Johnson Affirm. (Docket No. 5), Ex. A. On the afternoon of August 2, 2000, law enforcement officers from ATF and the New York State Police searched Marsch's residence pursuant to the warrant. Johnson Affirm. at ¶ 2; Docket No. 3. The search revealed only an imitation Tommygun and nothing was seized. Johnson Affirm. at ¶ 5; Docket No. 3. No criminal charges resulted from the search and it appears none are contemplated.

However, immediately following the arrest, Marsch was arrested by the State Police on charges arising from a domestic dispute with his then sixteen year old daughter which had occurred on July 30,

2000. Johnson Affirm. at ¶ 7. Marsch was taken to the Rensselaer County Jail where he alleges he was assaulted by correctional officers. Id. at ¶ 8. The criminal charges on which Marsch was arrested have since been resolved. Id. at ¶ 7.[1] Marsch has now commenced an action in this district against Rensselaer County and others concerning the alleged assault. Marsch v. Rensselaer County et al., No. 01–CV–1219 (DNH/DRH) (filed Aug. 1, 2001). Marsch moves to unseal the Morgan Affidavit.

### II. Discussion

An *ex parte, in camera* review of the Morgan Affidavit confirms that it contains information from various individuals, both named and unnamed. The United States opposes Marsch's motion on the ground that such information is privileged from disclosure. Mem. in Opposition (Docket No. 7) at 2. The Supreme Court has recognized the existence of a qualified privilege for statements of informers to law enforcement agencies. See *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). This privilege serves " 'the public interest in effective law enforcement' by protecting the flow of information to law enforcement agencies...." *Cullen v. Margiotta*, 811 F.2d 698, 715 (2d Cir.1987) (quoting *Roviaro*, 353 U.S. at 59, 77 S.Ct. 623).

"To overcome the privilege, the party seeking disclosure has the burden of establishing that the information sought is both relevant and essential to the presentation of his case on the merits ... and that the need for disclosure outweighs the need for secrecy." *Id.* at 715–16, 77 S.Ct. 623 (citations omitted); *Fleming v. Department of Justice*, No. CV–90–0896 (CPS), 1992 WL 151900, at *6 (E.D.N.Y.

---

1. On February 22, 2002, Marsch was arrested pursuant to a warrant charging him with making false statements in an attempt to ac- quire a firearm in violation of 18 U.S.C. § 922(a)(6). *United States v. Marsch*, No. 02–M–62 (DRH). That case remains pending.

June 17, 1992). "The availability of other means for discovery ... weighs against disclosure," *Cullen*, 811 F.2d at 716; *Black v. Sheraton Corp. of Am.*, 564 F.2d 550, 555 (D.C.Cir.1977), as does the assurance "by a law enforcement official that his identity will not be disclosed." *Cullen*, 811 F.2d at 716 (citing *Michelson v. Daly*, 590 F.Supp. 261, 265 (N.D.N.Y.1984), *appeal dismissed on procedural grounds*, 755 F.2d 913 (2d Cir.1985)).

▇▇ Here, Marsch seeks the information contained in the Morgan Affidavit for two reasons. First, he wishes to determine the source of the information in the affidavit to determine whether that person participated in the violation of his civil rights alleged in Marsch's action against Rensselaer County. Marsch contends that the fact of his arrest immediately following execution of the search warrant affords a basis for believing that the person who provided information for the Morgan Affidavit was involved in the alleged violation of his civil rights. Marsch Mem. of Law (Docket No. 6 at 7). Second, Marsch contends that counsel for the State Police officers named as defendants in his action against Rensselaer County has possession of the Morgan Affidavit and that disclosure to Marsch is necessary to place him on an equal footing in the litigation of that case. *Id.*

The United States represents that no law enforcement officer involved in Marsch's suit against Rensselaer County provided information as an informant in the Morgan Affidavit. Mem. in Opposition at 4–5. A review of the affidavit confirms this representation. The relevance of the information in the affidavit is, therefore, questionable and would, at best, constitute the representation of Morgan as to statements made by non-parties to Marsch's suit against Rensselaer County. Even if such statements might be relevant, the statements still fail to qualify as "essential" as they must for disclosure under *Cullen*. The statements reported in the affidavit concern the Tommygun and do not appear to pertain in any way to Marsch's suit against Rensselaer County. Thus, Marsch has failed to meet his burden of demonstrating that the Morgan Affidavit is either relevant or material to his pending civil case.

As to Marsch's need for the information, the affidavit's lack of relevance and the fact that the information contained in it is at best peripheral to the pending civil case compel ascribing limited weight to Marsch's need for the affidavit. The fact that counsel for certain defendants in that action may have obtained a copy of the affidavit does not place Marsch at any tactical or other disadvantage in that case given the lack of relevance and value that the affidavit bears to that case. On the other hand, it remains important for law enforcement officers to maintain the secrecy of sources of information to insure the continued flow of information regarding possible criminal conduct, particularly where confidentiality has been assured to a source. Furthermore, the record of this case and of the pending criminal case against Marsch reflect a penchant for firearms, the issuance of at least one order of protection against him and conduct which at times has been erratic and unstable. Thus, the record demonstrates a realistic possibility of retaliation against sources of information by Marsch if confidential sources of information in the Morgan Affidavit is are identified. Accordingly, Marsch has also failed to demonstrate that his need for the information in the affidavit outweighs the need of the United States to maintain its secrecy.

▇▇ However, the fact that the informer's privilege bars disclosure does not end the inquiry. The informer's privilege

protects from disclosure only that information which would tend to reveal the identity of a confidential source. Both the common law and the First Amendment otherwise guarantee that publicly filed court documents remain available to the public, including Marsch. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Republic Credit Corp. v. Autorino,* No. CIV399CV286PCD, 2001 WL 789310, at *1 (D.Conn. June 1, 2001). The Morgan Affidavit reports information received from sources which are both named and unnamed. No reason has been suggested why the identity of a source identified by name should remain under seal. Indeed, it was reasonably foreseeable to the United States that the affidavit would be disclosed to Marsch if criminal charges were instituted as a result of the execution of the search warrant and no steps were taken in the affidavit to protect their identities. Moreover, even information provided by a confidential source may be disclosed if it will not reveal the identity of the source.

■ The fact that a portion of a document is privileged from disclosure does not automatically mandate the protection of that privilege for the entire document. *See United States v. Haller,* 837 F.2d 84, 87 (2d Cir.1988). Portions of a document which are unrelated to the identification of an informant lack sufficient basis for continued sealing. Accordingly, those portions of the Morgan Affidavit which are unrelated to the identification of a confidential source will be ordered unsealed.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

1. On or before **April 1, 2002,** the United States shall submit to the chambers of the undersigned for *ex parte, in camera* review a copy of the Morgan Affidavit with proposed redactions in accordance with this decision; and

2. A hearing will be held on-the-record, *ex parte* and *in camera* with counsel for the United States and Special Agent Morgan on **April 3, 2002 at 9:30 a.m.** to determine which portions of the Morgan Affidavit may remain sealed and which shall be unsealed. .

**IT IS SO ORDERED.**